Reversed and Rendered and Memorandum
Opinion filed August 24, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00343-CV



Expo Holdings,
LP D/B/A Expo Motorcars 
and G. Michael Kim, Appellants 

v.

Peter Jacobson,
Appellee 



On Appeal from
the County Civil Court at Law No. 3

Harris County, Texas

Trial Court
Cause No. 905089



 

MEMORANDUM OPINION

In this breach of contract case, appellants, Expo
Holdings, L.P. d/b/a Expo Motorcars (“Expo”) and G. Michael Kim, appeal from
the trial court’s judgment in favor of appellee, Peter Jacobson.  On appeal, appellants
assert:  (1) Jacobson was suing to recover brokerage fees within the meaning of
the Real Estate License Act (the “Act”); (2) there is no evidence that Jacobson
holds a valid broker’s license as required by the Act; (3) there is no evidence
that the contract sued upon was written as required by the Act; (4) there is no
evidence that either Expo or Kim had a contractual duty to pay brokerage fees
to Jacobson; (5) there is legally and factually insufficient evidence to
support the award of attorney’s fees; and (6) the trial court erroneously
awarded pre-judgment interest at the rate of ten percent.  Because we agree
that the Act prohibits Jacobson’s recovery of any fee in this case, we reverse
and render a take-nothing judgment in favor of appellants.

Factual and Procedural Background

The basic facts of this case are not in dispute.  Jorge
Lujan, sales manager for Expo at the time of these events, knew that Kim, the
president of Expo, was searching for a larger property for Expo.  Lujan had
known Jacobson for several years and knew that Jacobson was involved in
commercial real estate.  Lujan introduced Jacobson to Kim, and, although the
parties disagree about the specific details, Jacobson agreed to attempt to
locate a property for Expo.  Jacobson was to be paid a fee of three percent of
the purchase price if Expo purchased a property he located.  No written
contract documented the details of the agreement.  Jacobson located an
acceptable property and began negotiations with the seller.  Kim was prepared
to make a purchase offer, so Jacobson and Lujan met for lunch to draft an offer
letter.  During their lunch meeting, Kim called Lujan and told him he preferred
to use his own broker to close the transaction and asked him to inform Jacobson
that his services were not needed.  Jacobson left the lunch meeting and was not
involved further in the property transaction.  When Jacobson later discovered
that Expo had moved to the property he had located, Jacobson contacted Kim and
attempted to collect his fee.  

After he was unsuccessful in collecting his fee, he
sued Kim and Expo for breach of contract and quantum meruit.  Expo and Kim
filed a verified denial, in which they asserted, inter alia, (1) the
affirmative defense of statute of frauds because Jacobson sought to recover
brokerage fees on a real estate transaction but the contract alleged was not in
writing, and (2) the contract was illegal because Jacobson was seeking to
recover brokerage fees for a real estate transaction but admittedly was not a
licensed real estate broker.

The case was tried to the bench.  At the trial, Lujan
testified that he, Jacobson, and Kim met shortly before the lunch meeting
during which Jacobson’s services were terminated.  Lujan described this meeting
as follows:

This was shortly after we visited the location that [Kim]
eventually purchased.  We were just sitting outside his office at Expo
Motorcars, and I had the idea, it just occurred to me, why have Expo pay Mr.
Jacobson when [the property owner] is going to pay someone 6 percent for
selling the property.  Why not have them split the 6 percent and let Mr. Jacobson
get 3 percent of it.  And at that time [Kim] said that’s a great idea.  Does he
have a real estate license?  And I asked – Mr. Jacobson was sitting on the desk
just down the hall.  And I said, do you have a real estate license?  And he
said no, but that’s not a problem.  We run everything through the company,
through my partner’s company.

Kim stated that the reason he
decided to end Jacobson’s involvement in the transaction was that he discovered
Jacobson was not a licensed broker:

Well, [Lujan] let me know – [Lujan] told me that – I guess
he went and asked Mr. Jacobson.  [Lujan] came and told me that he was not a
broker, that they had to bring in a friend, a third party to do the transaction
since he was not a broker. . . .

I felt very uncomfortable.  You know, I – I thought that
Mr. Jacobson was representing me to do the deal, and then when I found out that
he wasn’t a licensed broker I felt very uncomfortable, uneasy.  And – and since
– you know, it just – it’s just like, you know, if you were to tell me day
before trial, say, Mike [Kim], I don’t have a law degree, I’m not a lawyer,
something of that nature, and I felt that there was – might be something going
on.  I definitely didn’t want to bring somebody else in, a third party that I
didn’t know.  And I thought there might have been something going on with maybe
Mr. Lujan and Mr. Jacobson maybe under the table.  I just – I didn’t like the
deal at all.

 Kim had his own broker with
whom he had been working for several years and preferred to close the transaction
with this broker.  Jacobson testified that he went to Expo after he was
terminated, and Kim told him he would get his fee even if Kim had to “take it
out of [his] own pocket.”

Kim testified that the first attempted purchase of
this property fell through because another buyer made a better offer.  But
several months later, the property owner contacted Kim’s broker to explain that
the sale to the other buyer had not worked out.  Subsequent to the first offer,
Kim explained he had formed another company, Myark Group, LP, through which to
conduct his real estate transactions.  The Myark Group, LP ultimately purchased
the property that Jacobson had located for $1.5 million.

After the bench trial concluded, the trial court
requested briefing from the parties on, as is relevant to this appeal, whether
Jacobson could succeed in this suit even though he admittedly was not a
licensed real estate broker.  The trial court subsequently ruled in favor of
Jacobson, awarding him $45,000.00 in damages (three percent of the $1.5 million
purchase price of the property), attorney’s fees and costs, and pre- and
post-judgment interest.  Expo and Kim requested findings of fact and
conclusions of law, but the trial court did not file them.  They also filed a
motion for new trial, which was overruled by operation of law.  This appeal
timely ensued.

Discussion

            Although
appellants have raised six appellate issues, we only address those necessary
for disposition of this case.

I.         Did
Jacobson sue to recover brokerage fees within the meaning of the Real Estate
License Act?

In their first issue, Expo and Kim assert that they
established, as a matter of law, Jacobson had sued for fees for acts
constituting brokerage services under the Real Estate License Act.  As is
relevant here, the Act provides that a “broker” is an individual

who, in exchange for a commission or other valuable
consideration or with the expectation of receiving a commission or other
valuable consideration, performs for another person one of the following acts .
. . negotiates or attempts to negotiate the listing, sale, exchange, purchase,
or lease of real estate; . . . [or] aids or offers or attempts to aid in
locating or obtaining real estate for purchase or lease[.]

Tex. Occ. Code Ann. §
1101.002(1)(A)(iii), (viii) (Vernon 2004).  Additionally, “a person acts as a
broker . . . if, with the expectation of receiving valuable consideration,
directly or indirectly performs or offers, attempts, or agrees to perform for another
person any act described by Section 1101.002(1), as part of a transaction or as
an entire transaction.”  Id. § 1101.004.  

Here, Jacobson states in his petition, “Plaintiff was
contacted by Jorge Lujan, the sales manager for Defendants, along with Defendant
Michael Kim to discuss Plaintiff being retained to initially locate a site, and
then later, a site with a building, for Defendants’ business.”  He further
alleges:

The parties agreed that Plaintiff would be paid a
consulting fee of 3% (typical commission structure is 3% for the Buyer’s agent,
3% for the Seller’s agent) of the purchase price of the property and building
if a property was located by Plaintiff that meet [sic] the needs of
Defendants.   There was no written agreement documenting the contract.

Thereafter Plaintiff began searching for a property that
would meet Defendants’ needs.  After locating numerous properties that did not
meet Defendants’ needs, Plaintiff located a building and property. . . .

After Defendants agreed that the property was acceptable,
Plaintiff began negotiations with the seller and eventually a deal was struck. 
The usual and customary work continued, including obtaining a survey of the
property, moving towards a closing date.  Plaintiff, Lujan, Seller’s Broker, and
Defendant Kim met at the site for an inspection that lasted approximately two
hours prior to consideration of an offer.  Once the inspection and other
documents were obtained, Defendant Kim was ready to make an offer of purchase.

The trial testimony largely
supports these allegations.  The record reflects that Jacobson aided Expo and
Kim in locating or obtaining real estate for purchase, and he further
negotiated or attempted to negotiate the purchase of real estate.  Id. §
1101.002(1).  We thus conclude, based on both Jacobson’s petition and the trial
testimony, Jacobson was acting as a broker as contemplated by the Act.  See
id. §§1101.002(1); 1101.004; see also Swor v. Tapp Furniture Co.,
146 S.W.3d 778, 782 (Tex. App.—Texarkana 2004, no pet.) (explaining that the
fee for handling the sale of real estate is considered a real estate
commission, even if the compensation is labeled a “finder’s fee”).  Accordingly,
we sustain appellant’s first issue.

II.        Is
Jacobson entitled to sue for brokerage fees when he is not a licensed broker
and the agreement is not in writing?

In their second issue, appellants assert that because
Jacobson was seeking compensation for brokerage activities, he bore the burden
to plead and prove he had a valid broker’s license to recover these fees. 
Section 1101.806 of the Act provides that an individual may not maintain a
cause of action to collect compensation for acting as a broker unless that
individual pleads and proves that he was either a license holder at the time
the act commenced or an attorney licensed in any state.  Tex. Occ. Code Ann. §
1101.806(b).  

Here, Jacobson admitted in his pleadings that he was not
a real estate broker.  Additionally, he did not allege or establish that he was
a licensed attorney.  Under these circumstances, we see no basis for Jacobson
to recover brokerage fees in this case.  See id.; see also David
Gavin Co. v. Gibson, 780 S.W.2d 833, 834–35 (Tex. App.—Houston [14th Dist.]
1989, writ denied) (concluding that individual who failed to plead and prove he
was a licensed real estate broker was not entitled to recover commission for
transaction involving sale of realty).  We thus sustain Expo and Kim’s second
issue.

In their related third issue, Expo and Kim contend
that there is no evidence Jacobson had a valid, written agreement for brokerage
fees.  The Real Estate License Act provides:

A person may not maintain an action in this state to
recover a commission for the sale or purchase of real estate unless the promise
or agreement on which the action is based, or a memorandum, is in writing and
signed by the party against whom the action is brought or by a person
authorized by that party to sign the document.

Tex. Occ. Code Ann. §
1101.806(c).  Here, it is undisputed that Jacobson sought to recover on an
alleged oral contract.  But without a written fee agreement, even if Jacobson
were a licensed broker—which he admittedly is not—he is prohibited from
recovering a commission for his participation in a real estate transaction.  See
id.; see also Swor, 146 S.W.3d at 782–83. We thus sustain
appellants’ third issue.       

III.      Is there any
other basis upon which to affirm the trial court’s judgment?

A.        Exceptions to the Act

Jacobson asserts that he was acting as an
attorney-in-fact for Expo and Kim; thus the Act does not apply to him.  As is
relevant here, the Act provides that it does not apply to “an attorney-in-fact authorized
under a power of attorney to conduct a real estate transaction[.]”  Id. §
1101.005(2) (Vernon Supp. 2009) (emphasis added).  Here, there is nothing in
the record reflecting that Expo or Kim provided Jacobson with a power of
attorney to conduct a real estate transaction.  However, Jacobson states that
he was acting under a “verbal power of attorney.”  Jacobson has not cited, and
we have not found, any authority to suggest that a power of attorney may be
verbal.  Indeed, Black’s Law Dictionary defines “power of attorney” as “[a]n instrument
in writing whereby one person, as principal, appoints another as his agent
and confers authority to perform certain specified acts or kinds of acts on
behalf of principal.”  Black’s Law
Dictionary 1171 (6th ed. 1990). With absolutely nothing in the record to
indicate that Jacobson was acting under a valid power of attorney to conduct a
real estate transaction for appellants, we cannot affirm the judgment on this
basis.

B.        Quantum Meruit

            As noted above,
Jacobson also sued appellants under the theory of quantum meruit.  Quantum
meruit is an equitable remedy that is independent of an express contract.  See
Vortt Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex.
1990); see also AKIB Constr., Inc. v. Neff Rental, Inc., No.
14-07-00063-CV, 2008 WL 878935, at *4 (Tex. App.—Houston [14th Dist.] Apr. 3,
2008, no pet.) (mem. op.).  

Here, the Real Estate License Act provides that an
individual may not recover a commission for the sale or purchase of real estate
unless the commission agreement is in writing and signed by the party to be
charged.  Tex. Occ. Code Ann. § 1101.806(c).  There is no dispute in this case
that the parties do not have a signed, written agreement.  The Texas Supreme
Court has stated, “We have consistently refused to erode section [1101.806(c)]
with the same exceptions as may render oral contracts within the general
statute of frauds enforceable.”  Trammel Crow Co. No. 60 v. Harkinson,
944 S.W.2d 631, 636 (Tex. 1997) (discussing prior version of Act).  The Court
went on to explain that “to permit recovery of a commission on a theory of
quantum meruit would in effect render the statute requiring a written
commission agreement a nullity.”  Id. (citing Landis v. W.H. Fuqua,
Inc., 159 S.W.2d 228, 230–31 (Tex. Civ. App.—Amarillo 1942, writ ref’d)).  Thus,
this theory of recovery provides no basis to affirm the trial court’s
judgment.  See id.; see also Swor, 146 S.W.3d at 783 (“[I]f there
is no signed written agreement . . . public policy as expressed in [the Act]
preclude[s] any action to recover a commission, whether in tort or in
contract.”).

Conclusion

            In sum, the
provisions of the Real Estate License Act prohibit Jacobson from recovering any
fee for his services.  It is undisputed that no written agreement existed in
this case and that Jacobson was not a licensed real estate broker or
salesperson at the time the alleged cause of action arose.  Accordingly, we
have sustained appellants’ first, second, and third issues.  We therefore
reverse the trial court’s judgment and render a take-nothing judgment in favor
of Expo and Kim.  

 








                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

Panel consists of Chief Justice Hedges
and Justices Anderson and Christopher.